MINNIE ALICE BAKER *v.* DILLARD DEPARTMENT STORES, AND HOME INSURANCE COMPANY

73-34                                             495 S.W. 2d 839

Opinion delivered June 11, 1973

*Patten, Brown & Leslie,* for appellant.

*Terral, Rawlings, Matthews & Purtle,* for appellees.

LYLE BROWN, Justice. This is an appeal from the denial by the compensation commission and the circuit court on appeal of a claim of total and permanent disability. It was found that from June 1970 through December 1970

claimant, Minnie Alice Baker, sustained at different times aggravations to a pre-existing back condition which first came to surface in 1968; that she did not lose sufficient time from work so as to justify disability benefits, but that the carrier was liable for medical bills incurred during that period of time. Finally, it was found that claimant did not sustain any permanent disability from the periods of aggravation experienced in the course of her employment. On appeal, claimant seeks to reverse the last recited finding, contending that the episodes of aggravation resulted in a present condition of total and permanent disability.

For seven years prior to her quitting in December 1970, claimant had been employed by Dillard's in various capacities. In 1970 she was working in Pfeifer's Home Center, owned by Dillard's. For four years she had worked in the "charge-back department". Her work consisted mainly of processing defective merchandise that had to be sent back to manufacturers and distributors who sold to her employer. Merchandise would be brought in from customers and from numerous Dillard outlets over the state. In the process of inspecting and packing for shipments she said she handled small items as well as some items which were heavy—vacuum cleaners, lamps, lawn mowers, and complete sets of dishware. In the processing of the merchandise she said there was considerable stooping, bending, lifting, and reaching. Respondents challenged that testimony with evidence that claimant's work was considerably lighter.

In 1968 appellant went to Dr. Walter Carruthers for back trouble. The medical bills were paid by appellees. There was no loss of time from work. Dr. Carruthers' findings are not in the record.

Claimant testified that she injured her back on the job in June 1970. She sought the services of Dr. Kenneth Jones, an orthopedist. Dr. Jones reported that he found complaint of pain in the lower lumbar which he understood to be a gradual onset. The doctor said he was inclined to the opinion that the patient had a degenerating spine "with superimposed stress". He advised that clai-

mant avoid those activities which produced the stress and carry out strengthening exercises. She returned to the doctor a month later but no additional examination was noted. Based on her description of her occupational duties the doctor advised that she change her job.

In August 1970 claimant went to Dr. Joe K. Lester, another orthopedist. He took x-rays of the lumbrosacral spine. He said the x-rays revealed "a satisfactory bony structure throughout with some degenerative change being presented". The doctor concluded that her problems were related to lumbrosacral strain superimposed on preexisting degenerative change. After another interview with the claimant in October 1970 the doctor concluded that claimant "has symptomatic degenerative disc disease and has the classical findings of recurrent lumbosacral strain". Dr. Lester was of the opinion that claimant was suffering from osteo-arthritis, osteoporosis, and loss of calcium from the bones, all of which had been building up gradually over the years. He said that excessive stooping, bending, and lifting would cause flare-ups which last for days or weeks.

Under the evidence in this case the commission had to choose one of two alternatives. They could find that the 1968 episode and the 1970 experiences with claimant's back were accidental injuries. Or, the commission could find, as it did, that claimant had not preponderantly proved accidental injuries and could find that her problem was caused by flare-ups from the progressively developing arthritic condition. There was substantial evidence to support either theory and the evidence is so close that we could have affirmed the commission if it had adopted claimant's theory of accidental injuries. But we have long ago said that the findings of the commission are like those of a jury and we are bound by those findings if reasonable men could reach the same conclusion.

Affirmed.